**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

**No. 18-4829**

UNITED STATES OF AMERICA,

Plaintiff – Appellee,

v.

RONALD W. BOONE, a/k/a Ronnie Boone,

Defendant – Appellant.

Appeal from the United States District Court for the Eastern District of Virginia, at Norfolk. Henry Coke Morgan Jr., Senior District Judge. (2:16-cr-00126-HCM-RJK-1)

Argued: December 11, 2019                              Decided: February 7, 2020

Before KING, HARRIS, and RUSHING, Circuit Judges.

Dismissed by unpublished opinion. Judge King wrote the opinion, in which Judge Rushing joined. Judge Harris wrote a separate opinion concurring in the judgment.

**ARGUED:** Jon Michael Babineau, JON M. BABINEAU, PC, Norfolk, Virginia, for Appellant. Andrew Curtis Bosse, OFFICE OF THE UNITED STATES ATTORNEY, Norfolk, Virginia, for Appellee. **ON BRIEF:** G. Zachary Terwilliger, United States Attorney, Alexandria, Virginia, Melissa E. O'Boyle, Assistant United States Attorney, OFFICE OF THE UNITED STATES ATTORNEY, Norfolk, Virginia, for Appellee.

Unpublished opinions are not binding precedent in this circuit.

KING, Circuit Judge:

Ronald W. Boone appeals from the district court's November 6, 2018 order denying his motion to modify a condition of his supervised release. The court imposed concurrent three-year terms of supervised release following Boone's guilty pleas to two fraud-related offenses. On appeal, Boone contests — as he did in the district court — a supervised release condition that prohibits him from operating a motor vehicle. Because Boone knowingly and intelligently waived his right to appeal any condition of his supervised release in his plea agreement with the United States Attorney, and Boone's present challenge to the supervised release condition is within the scope of that appeal waiver, we must dismiss his appeal.

I.

A.

On September 15, 2016, the United States Attorney filed an information in the Eastern District of Virginia charging Boone with bank fraud and conspiracy to commit honest services wire fraud. With respect to the bank fraud charge, the information alleged that, from September 2014 to June 2016, Boone had engaged in a scheme to defraud two federally insured banks and that, during the fraud scheme, he fraudulently obtained a $13,200,000 loan. For the conspiracy charge, the information alleged that, from March 2004 to December 2014, Boone had bribed a Norfolk city councilman with cash, dinners, and beach house access in exchange for votes on city ordinances that benefitted Boone's businesses.

2

On September 16, 2016, Boone pleaded guilty to both charges in the information pursuant to a plea agreement with the United States Attorney. The plea agreement provides that, in exchange for Boone's guilty pleas, the government will refrain from prosecuting any member of Boone's immediate family and potentially move for a sentence reduction predicated on Boone's cooperation in other criminal proceedings. The plea agreement also describes the "Maximum Penalties" for Boone's offenses, including a term of supervised release. *See* Supp. J.A. 1.[1] Importantly, the plea agreement contains an appeal waiver whereby Boone agreed to waive his right to appeal "any sentence within the statutory maximum . . . on any ground whatsoever." *Id.* at 4.[2] Boone signed the plea agreement, attesting that he had reviewed the entire plea agreement with his lawyers, and that he understood and voluntarily agreed to its terms.

---

[1] Citations herein to the "Supp. J.A. __" refer to the contents of the Supplemental Joint Appendix filed by the parties in this appeal. And citations to the "J.A. __" refer to the contents of the Joint Appendix also filed by the parties in this appeal.

[2] The appeal waiver in the plea agreement provides:

> The defendant . . . understands that 18 U.S.C. § 3742 affords a defendant the right to appeal the sentence imposed. Nonetheless, the defendant knowingly waives the right to appeal the conviction and any sentence within the statutory maximum described above (or the manner in which that sentence was determined) on the grounds set forth in 18 U.S.C. § 3742 or on any ground whatsoever other than an ineffective assistance of counsel claim that is cognizable on direct appeal, in exchange for the concessions made by the United States in this plea agreement.

*See* Supp. J.A. 4. The only exception to the appeal waiver is for an ineffective assistance of counsel claim, and it is not relevant to this appeal.

3

During the September 16, 2016 plea hearing before the magistrate judge in Norfolk, Boone was placed under oath and confirmed that he had entered into the plea agreement with the United States Attorney. Boone explained under oath that he understood the appeal waiver and that his sentence could include a period of supervised release during which he would be subject to court-imposed conditions. At the conclusion of the plea hearing, the magistrate judge found that Boone's guilty pleas were knowing, voluntary, and supported by independent factual bases.

On March 20, 2017, the district court accepted the magistrate judge's findings, adjudged Boone guilty of the two offenses charged in the information, and conducted Boone's sentencing. During that hearing, the court calculated an advisory Sentencing Guidelines range of 37 to 46 months in prison and heard from the parties regarding the appropriate sentence. Pursuant to the government's obligations under the plea agreement, the prosecutor requested an eighteen-month sentence. On the other hand, Boone asked for a term of probation predicated on his "significant medical issues." *See* J.A. 55. In support of that leniency request, Boone's cardiologist testified at the hearing, explaining that Boone suffers from hypertension so severe that the cardiologist was "concerned about [Boone's] survival, [even] independent of incarceration." *Id.* at 37.

Responding favorably to the cardiologist's testimony, the district court sentenced Boone to three years of probation with twelve months of home confinement. The court concluded that a probation sentence was appropriate in light of Boone's medical condition and remarked that sentencing Boone to "any period of incarceration would . . . endanger his life." *See* J.A. 57. In announcing Boone's sentence, the court set forth several standard

4

probation conditions and also imposed a special condition of probation prohibiting Boone from operating a motor vehicle (the "Driving Condition"). As the court explained, given Boone's medical condition, his operation of a motor vehicle would endanger himself and the public. The court entered its criminal judgment on the day following the sentencing hearing.

B.

About four months after the district court entered its March 21, 2017 criminal judgment, a concerned citizen photographed Boone driving a car and sent the pictures to Boone's probation officer. When the probation officer confronted Boone, he lied and denied having driven a motor vehicle. Boone relented only after being shown the photographs depicting him driving. Based on that conduct, the probation officer filed a Petition on Probation, requesting that the district court issue a summons for Boone to show cause why his probation should not be revoked.

On August 9, 2017, the district court approved the Petition on Probation and ordered Boone to show cause why he should be permitted to remain on probation. About a month later, on September 8, 2017, the court conducted a probation revocation hearing. During that hearing, the court found that Boone had contravened the Driving Condition and thus violated his probation. The court also determined that Boone's advisory Guidelines range for the purposes of that proceeding was 3 to 9 months of imprisonment. The government requested a within-Guidelines-range sentence of imprisonment, but Boone asked that he be permitted to continue probation given his medical issues.

5

The district court rejected Boone's request, revoked his probation, and resentenced him to sixty days in prison, followed by three years of supervised release on the bank fraud conviction and to a concurrent term of three years of supervised release on the conspiracy offense. The court imposed many standard conditions of supervised release and again imposed the Driving Condition as a special condition.[3] On the same day as the probation revocation hearing, the court entered an order reflecting its rulings, and — regarding Boone's conditions of supervised release — stated that those conditions "shall otherwise be the same as the terms of probation specified in the [c]ourt's judgment entered March 21, 2017, including the special condition that [Boone] shall not operate a motor vehicle during his term of supervised release." *See* J.A. 95. Boone did not appeal from that September 8, 2017 order.

## C.

Boone subsequently served his sixty-day term of incarceration and was released in November 2017. Thereafter, on February 8, 2018, Boone moved the district court to modify the conditions of his supervised release, pursuant to 18 U.S.C. § 3583(e)(2).[4] As

---

[3] There are various categories of supervised release conditions. Some conditions are required by statute, *see* 18 U.S.C. § 3583(d), and others are so-called "standard" conditions recommended by the Sentencing Guidelines for all defendants, *see* USSG § 5D1.3(c), p.s. A sentencing court may also impose "any other condition it considers to be appropriate," as long as the condition "reasonably relate[s]" to certain statutory factors. *See United States v. Dotson*, 324 F.3d 256, 260 (4th Cir. 2003) (internal quotation marks omitted). Such a condition is sometimes called a "special" condition.

[4] Section 3583(e)(2) of Title 18 of the United States Code authorizes a court to "modify, reduce, or enlarge the conditions of supervised release, at any time prior to the expiration or termination of the term of supervised release."

6

pertinent here, Boone requested that the court strike the Driving Condition. For support, Boone attached to his motion a January 12, 2018 letter from his cardiologist, who opined that Boone "does not pose a risk to himself or others in the operation of a motor vehicle, taking into consideration his current medical conditions." *See* Supp. J.A. 77. Boone also supplied the court with a December 13, 2017 letter from his family physician, who offered a similar opinion. The court entered an order denying Boone's motion on February 9, 2018.

On August 1, 2018, Boone filed a second motion to modify his conditions of supervised release. He again asked the district court to remove the Driving Condition, relying primarily on the letters of his two physicians that he had submitted with his first motion. The court entered an order denying the second motion on September 5, 2018.

Finally, on November 1, 2018, Boone filed a third motion to modify the conditions of his supervised release (the "Third Motion to Modify"), which is the subject of this appeal. In support of the Third Motion to Modify, Boone offered another letter from his cardiologist, who opined that — as of October 31, 2018 — Boone could operate a motor vehicle without putting himself and the public at risk. The district court entered an order denying the Third Motion to Modify on November 6, 2018, and ruled that there was "no just cause for modifying the conditions of [Boone's] supervised release." *See* J.A. 104.

Three days later, on November 9, 2018, Boone noticed this appeal from the district court's order denying the Third Motion to Modify. After Boone filed his opening brief, the government sought dismissal of Boone's appeal based on the appeal waiver in the plea agreement.

7

II.

A.

We first assess the government's appeal waiver contention, which — if correct — would preclude our consideration of Boone's challenge to the district court's November 6, 2018 order denying the Third Motion to Modify. We review the validity of Boone's appeal waiver de novo. *See United States v. Thornsbury*, 670 F.3d 532, 537 (4th Cir. 2012). We have heretofore explained that, when the government invokes an appeal waiver and "there is no claim that the [g]overnment breached its obligations under the plea agreement, the waiver will be enforced to preclude a defendant from appealing a specific issue if the record establishes that the waiver is valid and the issue being appealed is within [its] scope." *See United States v. Archie*, 771 F.3d 217, 221 (4th Cir. 2014). An appeal waiver is valid if the defendant's agreement thereto is knowing and intelligent. *See United States v. Manigan*, 592 F.3d 621, 627 (4th Cir. 2010).

In this proceeding, we are satisfied that Boone's appeal waiver is valid, as he knowingly and intelligently agreed to it. By his signature on the plea agreement, Boone — a sophisticated entrepreneur — attested that he had reviewed the plea agreement with his lawyers, and that he had understood and voluntarily agreed to its terms. *See Thornsbury*, 670 F.3d at 537 (assessing defendant's background and familiarity with plea agreement in ruling that appeal waiver was valid). Crucially, during Boone's plea hearing, the magistrate judge inquired about the appeal waiver in the plea agreement, and Boone confirmed that he understood it. *See id.* ("Generally, if a district court questions a defendant regarding the waiver of appellate rights during the [plea hearing] and the record

8

indicates that the defendant understood the full significance of the waiver, the waiver is valid."). Thus, we are satisfied that the appeal waiver in Boone's plea agreement is valid. Having resolved that issue, we will assess whether Boone's present challenge to the Driving Condition is within the scope of the appeal waiver.[5]

B.

We next consider whether the appeal waiver covers Boone's appeal from the district court's November 6, 2018 order denying the Third Motion to Modify. In that regard, the government contends that this appeal falls within the scope of the appeal waiver because it constitutes an appeal from a sentence within the statutory maximum. Additionally, the government asserts that it has fulfilled the promises it made to Boone as part of the plea agreement and that Boone should now be held to his promises contained therein.

Boone argues, however, that the appeal waiver is inapplicable to this appeal because the waiver does not encompass an appeal from an order denying a motion to modify conditions of supervised release pursued under 18 U.S.C. § 3583(e)(2) (authorizing court

---

[5] The district court advised Boone at the conclusion of the probation revocation hearing that he could appeal the court's rulings, and the court did not mention the appeal waiver. *See* Fed. R. Crim. P. 32(j)(1)(B) (providing that district court must advise defendant of right to appeal sentence); *United States v. Marsh*, 944 F.3d 524, 529 (4th Cir. 2019) (ruling that Rule 32(j) requires district court to advise defendant of right to appeal even when defendant has agreed to appeal waiver). Given Boone's sworn assertion during the plea colloquy that he understood the appeal waiver, however, the court's failure to mention the waiver during the probation revocation hearing does not preclude our enforcement thereof. *See United States v. Lemaster*, 403 F.3d 216, 221 (4th Cir. 2005) (emphasizing binding nature of statements made during plea colloquy); *cf. Manigan*, 592 F.3d at 627-28 (declining to enforce appeal waiver where district court did not mention appeal waiver at guilty plea hearing and advised defendant at guilty plea and sentencing hearings that he could appeal sentence).

9

to modify supervised release conditions). He further contends that the appeal waiver should not apply here because the Driving Condition is "unreasonable" in light of "the uncontroverted evidence presented to the district court." *See* Reply Br. of Appellant 1.

Because "a plea agreement is essentially a contract between an accused and the government," we interpret plea agreements using contract law principles. *See United States v. Lewis*, 633 F.3d 262, 269 (4th Cir. 2011). Pursuant to those principles, we will "enforce a plea agreement's plain language in its ordinary sense." *See United States v. Jordan*, 509 F.3d 191, 195 (4th Cir. 2007) (internal quotation marks omitted). When the language of a plea agreement is ambiguous, we construe it against the government. *See United States v. Under Seal*, 902 F.3d 412, 417-18 (4th Cir. 2018). We will not, however, "create an ambiguity [in plea agreement language] where none legitimately exists." *See United States v. Tate*, 845 F.3d 571, 575 (4th Cir. 2017).

1.

Here, the plain language of the plea agreement between Boone and the United States Attorney provides that Boone waives his right to appeal "any sentence within the statutory maximum . . . on any ground whatsoever." *See* Supp. J.A. 4. Boone thus waived his right to appeal any sentence that was authorized by law and imposed by the district court for the offenses underlying the plea agreement. *See Thornsbury*, 670 F.3d at 539 (explaining that similarly worded appeal waiver barred appeal from any legal sentence). We are therefore satisfied that the appeal waiver would encompass an appeal from the court's September 8, 2017 order imposing the Driving Condition as a term of supervised release. Two sound reasons support that conclusion.

10

First, the statute that governs Boone's probation revocation, 18 U.S.C. § 3565(a)(2), authorizes a district court to "revoke the sentence of probation and resentence the defendant." Accordingly, at the probation revocation hearing, the district court *resentenced* Boone for the two offenses to which he pleaded guilty (as opposed to sentencing him for the violation of the Driving Condition while on probation). *See United States v. Schaefer*, 120 F.3d 505, 508 (4th Cir. 1997) (explaining resentencing process under § 3565(a)(2)). The provisions of the plea agreement — including the appeal waiver — are thus applicable to the sentence imposed at the probation revocation hearing. *See United States v. Jackson*, 583 F. App'x 280, 280 (4th Cir. 2014) (applying appeal waiver to appeal from sentence imposed at resentencing hearing); *United States v. Jones*, 538 F. App'x 285, 287 (4th Cir. 2013) (same); *see also United States v. Cooney*, 875 F.3d 414, 417 (8th Cir. 2017) (ruling that "an appellate waiver bars an appeal after resentencing" and collecting decisions agreeing with that proposition).

Second, the waiver of the right to appeal "any sentence" as set forth in the plea agreement encompasses challenges to Boone's supervised release. *See, e.g.*, *United States v. Copeland*, 707 F.3d 522, 525, 530 (4th Cir. 2013) (dismissing appeal contesting length of supervised release where defendant waived "right to appeal whatever sentence [was] imposed"); *United States v. Nguyen*, 618 F.3d 72, 74, 76 (1st Cir. 2010) (ruling that waiver of right to appeal "any sentence" applies to challenge to supervised release conditions); *United States v. Goodson*, 544 F.3d 529, 538 (3d Cir. 2008) (reaching same conclusion where defendant waived right to appeal his "sentence"). Indeed, the plea agreement provides that Boone's sentence might include a term of supervised release. Accordingly,

11

the Driving Condition falls within the "any sentence" language of the appeal waiver. For those two reasons — (1) the appeal waiver applies to the sentence fixed at the probation revocation hearing, and (2) the Driving Condition is part of "any sentence" within the meaning of the appeal waiver — an appeal from the September 8, 2017 order imposing the Driving Condition would fall within the appeal waiver.

2.

With that understanding, the question becomes whether Boone presenting his challenge to the Driving Condition in an appeal from the denial of a motion to modify his conditions of supervised release allows him to avoid the appeal waiver. And it plainly does not. As the Third Circuit has explained, a ruling otherwise would permit a defendant to perform an "end run around" an appeal waiver. *See United States v. Wilson*, 707 F.3d 412, 415 n.2 (3d Cir. 2013). For that very reason, courts have concluded "that an appeal from a denial of a defendant's motion . . . to modify the terms of supervised release imposed as part of the original sentence falls within the scope of the defendant's appe[al] waiver." *Id.* (citing *United States v. Scallon*, 683 F.3d 680, 681 (5th Cir. 2012) (applying appeal waiver to appeal from order denying defendant's motion to modify supervised release conditions)); *see also United States v. Damon*, 933 F.3d 269, 275 (3d Cir. 2019) (applying appeal waiver to appeal from order denying defendant's motion to terminate supervised release). We readily agree that a defendant is not entitled to appellate review of a contention that would have been subject to an appeal waiver on direct appeal through some procedural sleight of hand. Because Boone's appeal waiver would have encompassed an appeal from the September 8, 2017 order imposing the Driving Condition, we apply the

12

waiver to this appeal from the district court's November 6, 2018 order denying the Third Motion to Modify.[6]

Although we will enforce Boone's appeal waiver, we emphasize that a district court's decision to impose a special condition of supervised release (such as the Driving Condition) must have some reasonable basis, notwithstanding that such a decision might be unreviewable on appeal as a result of an appeal waiver. *See United States v. Dotson*, 324 F.3d 256, 260-61 (4th Cir. 2003) (explaining factors court must assess when imposing supervised release conditions that are additional to statutorily required conditions). And, even when a defendant has waived his right to appeal, he generally retains the right to contest a supervised release condition on the ground that the condition is "based on a constitutionally impermissible factor" or otherwise prohibited by law. *See Thornsbury*, 670 F.3d at 539; *see also Garza v. Idaho*, 139 S. Ct. 738, 745 & n.6 (2019) (specifying types of claims that courts have concluded may not be waived). Boone has not, however, presented any such contention in this appeal.

---

[6] In rejecting Boone's attempt to circumvent his appeal waiver, we observe and emphasize that he has received all the benefits promised by the government in exchange for the waiver. That is, the government did not prosecute any members of Boone's family, afforded Boone the opportunity to fully cooperate, and advocated for a substantially reduced sentence at the initial sentencing hearing of March 20, 2017.

## III.

Pursuant to the foregoing, we apply the appeal waiver in the plea agreement and dismiss this appeal.

*DISMISSED*

PAMELA HARRIS, Circuit Judge, concurring in the judgment:

I concur in the dismissal of this appeal because Boone did not file a timely notice of appeal from the district court's order of February 9, 2018, which denied the first of Boone's three motions seeking the same modification to the conditions of his supervised release on the same grounds. *See Fairley v. Fermaint*, 482 F.3d 897, 901 (7th Cir. 2007) ("[O]nce a conclusive resolution has been reached . . . a renewed motion for the same relief, or a belated request for reconsideration, does not reopen the time for appeal.").